43 F.3d 1473
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Aurora SELVA, a/k/a Aurora DiMaggio, a/k/a Aurora Angeli,
Defendant-Appellant.
 No. 94-1514.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1994.
 
 Before: WELLFORD, RYAN, and BATCHELDER, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 Defendant, Aurora Selva, head teller at a Michigan National Bank ("Bank") branch in Mt. Clemens, Michigan, was one of fourteen defendants charged in a superseding indictment for structuring and assisting certain defendants, including family members, to evade or avoid currency transaction reporting requirements for cash deposits in excess of $10,000. Defendant Selva was charged in three counts of the eighty-two count indictment which related to large currency deposits arising out of gambling activities involving defendant's brother and the Wolverine Golf Club. The government and Selva entered into a plea agreement whereby Selva agreed to cooperate and to plead guilty to one count of structuring transactions to evade reporting requirements. In the fall of 1993, the government agreed to dismiss the other counts and to seek imposition of a probationary sentence only.
 
 
 2
 On October 4, 1993, several days before Selva and her co-defendants were scheduled for trial, the district court conducted a change of plea hearing attended by defendant and her counsel. Selva's attorney assured the court that defendant understood the banking regulations and governing law, which required reporting of currency transactions in excess of $10,000. The amount of currency so structured in this case was $41,500.
 
 
 3
 At the hearing, defendant entered into a formal plea of guilty after the formal charge was read:
 
 
 4
 On or about March 19 and 20, 1987, in the Eastern District of Michigan, JACK ANTHONY LUCIDO, JACK CHRISTOPHER LUCIDO and AURORA SELVA, Defendants herein, did knowingly and willfully for the purpose of evading the reporting requirements of [Sec.] 5313(a), United States Code, Title 31, and the regulations promulgated thereunder, structure, assist in structuring, and attempt to structure and assist in structuring of a transaction with the following domestic financial institutions, as more particularly described below.
 
 
 5
 Count VII (emphasis added). The following colloquy occurred as part of the district court's acceptance of the guilty plea:
 
 
 6
 Q. Are you, therefore, pleading guilty freely and voluntarily, because, in fact, you are guilty, and it is your choice to plead guilty?
 
 
 7
 A. Yes.
 
 
 8
 Q. Please tell me in your own words what it is that you did that makes you believe that the you are guilty of the crime alleged in Count 7 of the indictment.
 
 
 9
 (Discussion off the record.)
 
 
 10
 THE WITNESS: On March 19, 1987, I received a call from my brother, who was at the time working at the Lucido's, at the Wolverine Golf Course, and I told him how Jack Lucido could come in and cash a couple of checks on two different dates to avoid reporting.
 
 BY THE COURT:
 
 11
 Q. So did--did your brother inquire about how that might be accomplished?
 
 
 12
 A. Yes.
 
 
 13
 Q. Okay. And you told him that if the checks were made out on two different dates in amounts under $10,000, that that would avoid the reporting requirements?
 
 
 14
 A. Yes.
 
 
 15
 Q. Okay. And you understood, you knew what the reporting requirements were for the bank?
 
 
 16
 A. Yes.
 
 
 17
 Q. And you understood that by doing the transactions this way, by dividing the $15,000 into two separate checks, that the purpose of it was to avoid the reporting requirements?
 
 
 18
 A. Yes.
 
 
 19
 Q. And this happened in Mount Clemens?
 
 
 20
 A. Uh-huh, yes.
 
 
 21
 The prosecutor then questioned the defendant further, resulting in the following exchange:
 
 
 22
 BY MR. SAUGET [Assistant United States Attorney]:
 
 
 23
 Q. Did you personally cash one--cash one of these checks for $6,000?
 
 
 24
 MR. LEGGHIO [Defendant's Attorney]: Do you recall?
 
 
 25
 THE WITNESS: I would have--I would have to look at the records.
 
 BY MR. SAUGET:
 
 26
 Q. You did cash checks nonetheless from Mr. Lucido?
 
 
 27
 A. Yes, I did.
 
 
 28
 Q. At the time that you cashed them, you knew that it was wrong and it was structuring a transaction, is that correct?
 
 
 29
 A. At the time I did it?
 
 
 30
 Q. Yes.
 
 
 31
 A. Are we--after--are we talking on March 19th, after?
 
 
 32
 Q. Yes.
 
 
 33
 A. Yes.
 
 
 34
 A jury subsequently acquitted several of Selva's co-defendants. With Selva's sentencing scheduled for January 13, 1994, defendant's new attorney filed a motion "for withdrawal of plea" on December 30, 1993. This motion explained that Selva was married, had a newborn child, and that she pleaded guilty on the advice of her attorney "despite her protestations of innocence."[1] The motion further stated that defendant was told "there was no defense to the charge against her and it was more likely that she would go to jail." Selva pleaded duress and an involuntary plea, but the district court denied defendant's motion for withdrawal.
 
 
 35
 Selva and her counsel admitted her intimate knowledge of bank currency reporting requirements. The government has pointed out that defendant has not characterized her attorney at the time as having rendered ineffective assistance of counsel. Indeed, she has indicated that Mr. Legghio was "a fine man and a fine attorney." In essence, defendant sought to abrogate what, in hindsight, after intervening acquittals, she considered to be the "wrong decision" (to plead guilty). The government pointed out, in opposition to the motion for withdrawal, that Selva raised no defense to the charges and that, if the motion was granted, the district court would be permitting, in effect, a severance, which it had previously denied.
 
 
 36
 In denying the motion to withdraw, the district court exercised its discretion, stating, among other reasons:
 
 
 37
 In this case, I believe Ms. Selva made a--a calculated and informed decision not to risk a guilty verdict as a result of the trial, which certainly, on October 4th, 1993, seemed like a substantial possibility, a significant possibility. She decided, based on the offer that the Government made, based on what she knew she had done, looking at a trial, which ended up taking about two months, that she would admit to what she had done and take the plea of guilty, with the Government agreement that it would not seek more than probation.
 
 
 38
 ....
 
 
 39
 I suppose if Ratzlaf[2] had been on the books, I might have asked--I might have asked one additional question with respect to the statute, but certainly the factual basis is made out to establish that Ms. Selva knew about the CTR reporting requirements, knew that she was structuring the transaction to avoid them, and knew that her conduct was wrong. I don't think that the magic word "unlawful" needs to have been used, and I don't believe that the plea needs to be set aside on that basis.
 
 
 40
 So under the--finally with respect to the potential prejudice to the Government if the motion to withdraw is granted, the potential is--is substantial here. This--this part of this case has been tried at great expense, and at great effort on behalf of the Government.
 
 
 41
 Defendant maintains that the district court did not adhere to the specific requirements of FED.R.CRIM.P. 11(f). Rule 11(f) provides in pertinent part:
 
 
 42
 Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.
 
 
 43
 FED.R.CRIM.P. 11(f). The district court indicated, after the hearing on the guilty plea, that it was satisfied as to the factual foundation for Selva's plea. Defendant, however, maintains that the requirements of Rule 11 were not met as to a "knowing and voluntary" plea, citing the following language from McCarthy v. United States, 394 U.S. 459 (1969):
 
 
 44
 A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.
 
 
 45
 Id. at 466 (citations omitted). Defendant argues more specifically that she did not indicate "that she specifically intended to commit a crime," and that she "did not realize that her conduct did not actually fall within the charge." At bottom, Selva's argument is that the Supreme Court's five to four majority opinion in Ratzlaf v. United States, --- U.S. ----, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), delivered her from the snare of 31 U.S.C. Secs. 5322 and 5324(3).
 
 
 46
 In Ratzlaf, the defendant was convicted of structuring transactions for the purpose of evading reporting requirements. Ratzlaf argued on appeal that the statute only provides for conviction when a defendant "willfully violat[es]" the reporting requirements and, therefore, the trial court erred by not instructing the jury that the government must also prove that Ratzlaf "knew the structuring was unlawful." Id. Prior to Ratzlaf's appeal, the United States Courts of Appeals had split on this question. Some courts only required proof that the defendant knew of the reporting requirements and tried to evade them, see United States v. Scanio, 900 F.2d 485, 491 (2d Cir.1990), while others interpreted "willfully" as requiring proof that the defendant violated a known legal duty. See United States v. Aversa, 984 F.2d 493, 502 (1st Cir.1993) (en banc), vacated sub nom. Donovan v. United States, 114 S.Ct. 873 (1994). The United States Court of Appeals for the Ninth Circuit held that no specific intent or heightened mens rea was required under Sec. 5322 or Sec. 5324(3). See 976 F.2d 1280 (9th cir. 1992), cert. granted, 113 S.Ct. 1942 (1993).
 
 
 47
 The Supreme Court granted certiorari to resolve the split in the circuits and reversed, holding that "to give effect to the statutory 'willfulness' specification, the Government had to prove Ratzlaf knew the structuring he undertook was unlawful." See Ratzlaf, 114 S.Ct. at 658. Writing for the majority, Justice Ginsburg rejected the government's contention that no specific intent need be shown because violators of the federal reporting requirements "by their very conduct exhibit a purpose to do wrong, which suffices to show 'willfulness.' " Id. at 661. The majority explained that "structuring is [not] so obviously 'evil' or inherently 'bad' that the 'willfulness' requirement is satisfied irrespective of the defendant's knowledge of the illegality of structuring." Id. at 662. The Court noted that under the government's construction of the statute a person would be culpable for structuring transactions for completely legitimate reasons, such as maintaining confidentiality to lessen the risk of burglary or to prevent a former spouse from learning of new wealth. Id. at 661. The Court concluded that "[w]e do not dishonor the venerable principle that ignorance of the law generally is no defense to a criminal charge. In particular contexts, however, Congress may decree otherwise. That, we hold, is what Congress has done with respect to 31 U.S.C. Sec. 5322(a)." Id. at 663 (emphasis omitted).
 
 
 48
 Assuming, without deciding, that Ratzlaf is to be applied retroactively to Selva's 1987 conduct, we still would not construe Ratzlaf to require that we set aside her guilty plea.
 
 
 49
 Selva was an experienced bank official, unlike Ratzlaf. Selva stated that she knew "it was wrong" to structure transactions to evade the reporting requirements. We believe it is reasonable to infer from the circumstances that Selva knew it was not legal for her knowingly and willfully to motivate and participate in structuring transactions of this kind. We believe it was appropriate for the district court to infer that Selva was not stating that she merely knew it was unethical when she acknowledged the "wrongness" of her conduct. In Ratzlaf, the Supreme Court deemed it noteworthy that the government never "asserted that [he] was engaged in other conduct Congress sought principally to check." Id. at 660-61 n. 11. Where as here, Selva was also charged as a coconspirator for advising the other principal conspirators, the Lucido family, to avoid currency reporting requirements. The indictment charge read to her at the change of plea hearing referred to knowing and willful conduct on the part of Selva. Moreover, defendant was advised and represented by counsel at all pertinent times.
 
 
 50
 We find the evidence, together with reasonable inferences, to suffice that Selva acted with the requisite unlawful knowledge and intent in the conduct described in Count VII. Because there was substantial compliance with FED.R.CRIM.P. 11, we find no error in accepting Selva's plea as knowing and voluntary. See United States v. Edgecomb, 910 F.2d 1309, 1313 (6th Cir.1990).
 
 
 51
 Selva also contends that it was error to reject her petition to withdraw her guilty plea. The standard we apply is abuse of discretion. See United States v. Spencer, 836 F.2d 236, 241 (6th Cir.1987); Doherty v. American Motors Corp., 728 F.2d 334, 338 (6th Cir.1984). In this connection, assertion of "legal innocence is an important factor." FED.R.CRIM.P. 32(d) advisory committee's note. Another important factor is the timeliness of the motion to withdraw an earlier guilty plea. In Spencer, we found that a twenty-two day delay was too long a period; a period about one-fourth of the time involved in this case. Spencer, 836 F.2d at 239. Applying other factors set out in United States v. Goldberg, 862 F.2d 101, 103-104 (6th Cir.1988), we are satisfied that the district court did not abuse its discretion in denying Selva's motion to withdraw.
 
 
 52
 Accordingly, we AFFIRM the decision of the district court.
 
 
 
 [1]
 Selva made no such assertion of innocence to the government nor to the court prior to the trial of her co-defendants, nor indeed prior to December 30, 1993
 
 
 [2]
 Ratzlaf v. United States, --- U.S. ----, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)