576 F.2d 453
 17 Fair Empl.Prac.Cas. 1523, 16 Empl. Prac.
Dec. P 8313
William S. HERRMANN, Plaintiff-Appellant,
v.
Leonard P. MOORE, Abraham M. Lindenbaum, Paul Windels,
Willard G. Hampton, Wilbur A. Levin, Michael Charles
O'Brien, Jerome Prince, Hollis K. Thayer, M. Henry
Martuscello, Edward Thompson, Cecily Selby, John Doar,
Michael P. Shumaecker, Eric Nelson, Brooklyn Law School,
Raymond E. Lisle, Gerard A. Gilbride, Milton Gabriel
Gershenson, Joseph Crea, Samuel Hoffman, John J. Meehan,
Philip K. Yonge, Richard T. Farrell, Martin R. Hauptman,
Jerome M. Leitner, David G. Trager, Henry Mark Holzer, Oscar
Chase, Brian E. Comerford, Richard Allan, Margaret A.
Berger, George W. Johnson, Susan M. Brandt, Deborah H.
Schenk, Paul Sherman, Gary A. Schultze, Dusan Djonovich,
Steven S. Elbaum and S. Hal Mercer IV, Defendants-Appellees.
 No. 646, Docket 77-6184.
 United States Court of Appeals,
Second Circuit.
 Argued March 7, 1978.
Decided May 10, 1978.
 
 John F. Martin, of Martin & Wiggins, New York City, for appellant.
 Eugene R. Scheiman, Frank W. Krogh, Thomas R. Jones, of Cahill Gordon & Reindel, New York City, for appellees.
 Before OAKES, Circuit Judge, NEAHER, District Judge,* and WYZANSKI, Senior District Judge.**
 WYZANSKI, Senior District Judge:
 Plaintiff appeals from the District Court's summary judgment dismissing his claim on the merits.[1]
 Plaintiff, William S. Herrmann was a tenured professor at defendant Brooklyn Law School until the school dismissed him on September 17, 1975. Plaintiff's confusing complaint names as defendants Brooklyn Law School and 38 individuals, including the dean of the school, some of its trustees, and some of its faculty. Plaintiff alleges that he is a citizen of Connecticut and all defendants are citizens of New York, and that the District Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1343. As we read the complaint[2] it alleges violations of 42 U.S.C. §§ 1983, 1985(2) clause 1, 1985(2) clause 2, and 1985(3), as well as violations of the law of New York. Plaintiff prayed that the Court should direct Brooklyn Law School to restore him to his position as a tenured law professor, that the Court should declare invalid the school's resolution removing him from office, and that he recover two million dollars in damages.
 After receiving all the material the parties chose to submit, the District Court on October 19, 1977 filed a memorandum opinion and entered judgment for defendants.
 In his brief in this court plaintiff limits the questions presented to his claims under 42 U.S.C. §§ 1983, 1985(2) and 1985(3). We, therefore, rule that he has abandoned any claims which do not involve alleged violations of those statutes. Any claims which rest on local law and fall within the diversity jurisdiction statute, 28 U.S.C. § 1332, are not before us.
 It will be most convenient if we take the claims in the following order: (1) 42 U.S.C. § 1983, (2) 42 U.S.C. § 1985(3), (3) 42 U.S.C. § 1985(2) claim 2, and (4) 42 U.S.C. § 1985(2) claim 1.
 The 42 U.S.C. § 1983 Claim
 42 U.S.C. § 1983 provides that:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 It is well-settled that in order to establish a claim based on 42 U.S.C. § 1983, plaintiff must prove that at least one of the defendants acted under color of state law. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Grafton v. Brooklyn Law School, 478 F.2d 1137 (2nd Cir. 1973).
 In paragraphs 16, 17 and 18 of the complaint plaintiff in effect alleges that defendants conspired with Edward Thompson, the Administrative Judge of the Civil Court of the City of New York who, under color of state law, subjected him to the deprivation of his civil rights under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States.
 To meet his burden of proving that Thompson, acting under color of office, subjected him to a deprivation of his Constitutional rights, plaintiff offered evidence to the following effect:
 (1) April 2, 1973, in the Civil Court of the City of New York plaintiff brought an action for slander against his colleague Professor Crea. Professor Crea filed a counterclaim. The case came before Judge Kleiger.
 (2) Judge Edward Thompson, a defendant in the case at bar, was both Deputy Administrative Judge of the Civil Court of The City of New York and a trustee of the Brooklyn Law School. Judge Thompson is the supervisor of Judge Kleiger, but the scope of Judge Thompson's authority as Deputy Administrative Judge is not described.
 (3) On October 1, 1973 on the stationery of the Brooklyn Law School, Raymond E. Lisle, the Dean of the School, notified Professors Crea and Herrmann that Justice Thompson "expects to see you in his Chambers at 2:30 (later changed to 2:00) p. m. on Tuesday, October 2, 1973, with regard to the current litigation. He said he will ask Judge Kileger (sic) to be present."
 (4) Plaintiff went to Judge Thompson's office on October 2, 1973, but Judge Thompson told plaintiff that this was the wrong day and to return October 4. Judge Thompson, then, had his chauffeur drive plaintiff back to the law school.
 (5) October 4 plaintiff was ill and telephoned the dean's secretary, Ms. Dolores Kuebler, so to advise Judge Thompson. Shortly thereafter plaintiff received a telephone call from Ms. Kuebler "advising him that he was ordered to telephone Judge Thompson at once."
 (6) Plaintiff telephoned Judge Thompson and had a conversation with him during which Judge Thompson said "Judge Kleiger, Professor Crea and Mr. Falzone (Crea's lawyer) are here with me what's wrong with you?" Plaintiff said he was ill. Judge Thompson then said, "I want a withdrawal of your action from you and I want it right now; I have news for you, your case is going nowhere, I have spoken to Judge Kleiger and all the judges in Brooklyn know or will know about this case and you are going to lose it; the Board of Trustees (of Brooklyn Law School) are tired of your nonsense in bringing this action and they want it withdrawn and I am ordering you to withdraw it today." Judge Thompson then ordered defendant to appear in Judge Kleiger's chambers in Brooklyn at a later date.
 (7) Plaintiff thereafter appeared in Judge Kleiger's chambers. That judge said "I have had discussions with Judge Thompson concerning this matter and I am telling you, you had better withdraw your lawsuit or you will be in serious trouble at the law school. You will not get five cents recovery in your lawsuit and you better drop it."
 (8) However, plaintiff did not drop his suit.
 (9) October 8, 1976 Judge Dematteo, who had replaced Judge Kleiger, granted plaintiff's motion for summary judgment dismissing the counter-claim. The case is still pending in the Civil Court and has been placed on the trial calendar by plaintiff.
 The foregoing evidence indicates that in most of his actions connected with the case of Herrmann v. Crea, Thompson was acting in his capacity as a trustee of Brooklyn Law School, and not in his capacity as a state court judge. But there are ambiguities. When Dean Lisle ordered plaintiff to get in touch with Thompson, it is arguable that Thompson was selected not merely because he was a trustee but also because he was Deputy Administrative Judge of the court in which plaintiff had brought suit against Professor Crea. Moreover, it is plausible to contend that it was in his role as Deputy Administrative Judge that Thompson said, if plaintiff quotes him correctly, that, "I have spoken to Judge Kleiger and all the judges in Brooklyn know or will know about this case and you are going to lose it." So we cannot say that there is not a genuine dispute between plaintiff and defendants as to whether Thompson sometimes acted under color of his office as Deputy Administrative Judge in connection with Herrmann v. Crea.
 However, there is no genuine dispute between plaintiff and defendant that Thompson did not adversely affect that suit. After Thompson's intervention, the case was transferred to Judge Dematteo who granted plaintiff's motion to dismiss defendant's counterclaim, and thereafter placed the case on the trial calendar, where it still is pending. Thus, plaintiff has failed to show, as is required by 42 U.S.C. § 1983 that under color of law he actually[3] "subjected" plaintiff to the "deprivation" of any Constitutional rights.[4]
 We do not need to consider in connection with 42 U.S.C. § 1983 what Thompson did as a trustee in discharging plaintiff, because indisputably Thompson was then acting in a private capacity and not under color of state office.
 Hence we agree with the District Judge's conclusion that with respect to plaintiff's claim based on 42 U.S.C. § 1983 defendants were entitled to summary judgment.[5]
 The 42 U.S.C. § 1985(3) Claim
 42 U.S.C. § 1985(3) provides a remedy
 "If two or more persons in any state . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."
 Despite the breadth of the language, the Supreme Court in Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, held that in order to maintain an action under § 1985(3) "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action."
 To meet the requirement enunciated in Griffin, paragraph 16 of the complaint alleges that "the defendants conspired . . . to interfere with . . . his work on behalf of advancing the opportunities and equality of minority people to deprive him of his employment and to a livlihood (sic) for himself and the equal enjoyment of rights." Further statements in paragraphs 24 and 25 allege that defendants conspired to deny plaintiff equal protection of the laws because of plaintiff's "steps to change the defendants' policy so as to enable the defendant law school to hire minority employees" and because "they did not condone plaintiff's advocacy of racial equality and his opposition to the practice of racial discrimination that existed within Brooklyn Law School."
 The only evidence which plaintiff offered to prove his allegations was (1) that the Brooklyn Law School had disproportionately few Black instructors, (2) that when plaintiff urged that the Committee on Faculty Selection propose a qualified Black, Leon B. Appelwhaite, the Committee did not recommend him, and (3) that plaintiff was constantly advocating that more Blacks should be named.
 Plaintiff does not point to a single instance where any of the defendants reprimanded plaintiff, disciplined him, refused him promotion or salary increase, or in any way expressed hostility to plaintiff because of his advocacy of Black persons or other minorities. All that is offered is a memorandum dated March 22, 1974 from Professor Yonge, Chairman of the Committee on Faculty Appointments to Dean Lisle. This memorandum, principally criticizes plaintiff for his absences from 30 of the 50 interviews held by the committee, and for usually refusing when present to participate in interviewing other than Blacks. The memorandum shows no hostility to Blacks, and indeed reports that in New Orleans the committee granted many more interviews, proportionately, to Black than to White applicants.
 Even if defendants have interfered with plaintiff's advocacy, there is no showing that they acted with a discriminatory animus. Proof that a discharged person is Black or an advocate of Blacks does not justify an inference that the person who caused the discharge was racially motivated.
 In short, there is no evidence that defendants dismissed plaintiff as a professor, or otherwise penalized him, because of his advocacy of Blacks or other minorities.
 Hence we agree with the District Judge's conclusion that with respect to plaintiff's claim based on 42 U.S.C. § 1985(3) defendants were entitled to summary judgment.
 The 42 U.S.C. § 1985(2) Clause 2 Claim
 42 U.S.C. § 1985(2) clause 2 provides for an action
 "if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . .."
 Paragraph 16 of the complaint alleges in words copied from 42 U.S.C. § 1985(2), clause 2 that defendants conspired together "for the purpose of impeding, hindering, obstructing, and defeating the due course of justice with the intent to deny plaintiff the equal protection of the laws."
 
 
 1
 Since 42 U.S.C. § 1985(2) clause 2 applies only to conspiracies with respect to judicial proceedings in a State or Territory, we assume that the complaint refers to an alleged conspiracy with respect to Herrmann v. Crea, an action plaintiff brought on April 2, 1973 in the Civil Court of New York or possibly Herrmann v. Lisle et al., an action which plaintiff brought on July 18, 1975 in the Supreme Court of the State of New York, County of Kings.
 
 
 2
 However, no matter to which state court proceedings the complaint refers, plaintiff in the case of a 42 U.S.C. § 1985(2) claim, as in the case of a § 1985(3) claim, bears the burden of proving that defendants had a "class-based" or other "invidiously discriminating animus." Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975). As we have already observed, there is no evidence that defendants were motivated by the requisite animus.
 
 
 3
 Hence we agree with the District Judge's conclusion that with respect to plaintiff's claim based on 42 U.S.C. § 1985(2) clause 2 defendants were entitled to summary judgment.
 
 The 42 U.S.C. § 1985(2) Clause 1 Claim
 
 4
 42 U.S.C. § 1985(2) Clause 1 provides for an action
 
 
 5
 "if two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of having so attended or testified . . .."
 
 
 6
 In paragraph 16 of his complaint plaintiff, tracking the statutory language just quoted, alleges that defendants "conspired together to deter the plaintiff from attending in court and from testifying therein freely, fully, and truthfully and to injure him on account of so having testified."
 
 
 7
 The material submitted by plaintiff to the District Court and the brief submitted by plaintiff's counsel to this court show that the court referred to by paragraph 16 of the complaint is the United States District Court for the Eastern District of New York and that the relevant case is Herrmann v. Lisle et al., 75 C 130. The following are the material facts as to which there is no dispute:
 
 
 8
 (1) January 28, 1975 plaintiff filed a complaint in the United States District Court for the Eastern District of New York against Dean Raymond E. Lisle and Professors Joseph Crea, Philip K. Yonge and David G. Trager of Brooklyn Law School. This case is Herrmann v. Lisle et al., 75 C 130.
 
 
 9
 (2) Thereafter the Board of Trustees of Brooklyn Law School established a Special Committee, composed only of trustees, to consider whether or not Herrmann had undertaken the litigation in good faith. The trustees' Special Committee interviewed the litigants and a student referred to in the complaint and examined documents. The student had no other role than as a witness. The Special Committee concluded that Herrmann's suit was not in good faith. On March 13, 1975 the trustees' Special Committee petitioned a Faculty Hearing Committee to determine immediately whether the statements of the trustees' Special Committee warranted commencing proceedings leading to the removal of Professor Herrmann from the faculty of Brooklyn Law School.
 
 
 10
 (3) May 14, 1975 the Faculty resolved to request the trustees' Special Committee to broaden its petition to include all the law suits between Herrmann and members of the faculty.
 
 
 11
 (4) May 19, 1975 the Board of Trustees adopted a resolution requesting the Faculty to conduct a hearing on all aspects of Herrmann's litigation against members of the faculty.
 
 
 12
 (5) June 5, 1975 a special meeting of the faculty voted to hold a hearing as directed by the trustees. The faculty then addressed itself to problems of procedure.
 
 
 13
 (6) About June 5, 1975 plaintiff Herrmann through his attorney filed a motion in 75 C 130 before Judge Costantino, and referred to certain documents which defendant Lisle regarded as confidential.(7) As counsel to the faculty, defendant Holzer prepared and served on plaintiff Herrmann about July 10, 1975 a set of specific charges with respect to Herrmann's conduct in connection with Herrmann v. Lisle, et al. in the Eastern District of New York as well as other matters.
 
 
 14
 (8) From August 18 to August 21, 1975 the faculty held hearings on the charges.
 
 
 15
 (9) August 22 the faculty made a report of its findings.
 
 
 16
 The report shows that all the charges against Herrmann with respect to Herrmann v. Lisle et al. were proven, and substantially all the other charges were proven. The report states that
 
 
 17
 The Faculty . . . after due deliberation, by secret written ballot and by majority votes makes the following recommendation to the Board of Trustees as to the sanction it deems appropriate, as requested by the Resolution of the Board of Trustees:
 
 
 18
 THAT PROFESSOR WILLIAM S. HERRMANN, JR. BE IMMEDIATELY SUSPENDED FROM ALL DUTIES AND FUNCTIONS. THAT HIS TENURE AT BROOKLYN LAW SCHOOL BE REVOKED, AND THAT HE BE DISMISSED FROM THE FACULTY OF BROOKLYN LAW SCHOOL.
 
 
 19
 (10) September 17, 1975, the Board of Trustees concurred in the recommendation, and dismissed plaintiff from his tenured professorship.
 
 
 20
 We agree with plaintiff's contention that the foregoing facts show that among the reasons for the discharge of plaintiff Herrmann was that he had attended the United States District Court for the Eastern District of New York and that he had testified in that court. But we do not sustain his contention that defendants conspired to discharge plaintiff. Every one[6] of the defendants who was involved in the so-called conspiracy was either a trustee or faculty member of the Brooklyn Law School which is admittedly an educational corporation and was acting in that capacity in connection with the discharge.
 
 
 21
 In Girard v. 94th and Fifth Avenue Corp., 530 F.2d 66 (2nd Cir. 1976) we recently applied, in connection with a case arising under 42 U.S.C. § 1985(3), the familiar doctrine that there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment. That precedent binds us here.
 
 
 22
 Inasmuch as in the case at bar the complained-of injury was the discharge of plaintiff by the corporation, and inasmuch as each of the persons shown to have any purpose to further the discharge was a trustee or employee of the corporation and acting for it, we agree with the District Judge's conclusion that with respect to plaintiff's claim based on 42 U.S.C. § 1985(2) clause 1 defendants were entitled to summary judgment.
 
 
 23
 Judgment affirmed.
 
 
 
 *
 United States District Judge for the Eastern District of New York, sitting by designation
 
 
 **
 Senior District Judge for the District of Massachusetts, sitting by designation
 
 
 [1]
 The foregoing introductory paragraph requires a brief explanation. After plaintiff filed his complaint, defendants in accordance with Fed.R.Civ.P. 12(b) (6) filed a motion to dismiss the complaint for failure to state a cause of action, and they also presented matters outside the pleadings so that the motion should be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56. Plaintiff also presented his pertinent material
 
 
 [2]
 Nowhere in the complaint does plaintiff refer specifically to 42 U.S.C. § 1983 or § 1985
 
 
 [3]
 We do not consider whether in the case of an unsuccessful conspiracy plaintiff has other remedies than those provided by 42 U.S.C. §§ 1983, 1985(2) and 1985(3). Plaintiff's grounds of appeal do not present any such question
 
 
 [4]
 We have not overlooked plaintiff's allegation that when, in the action of Herrmann v. Crea, defendant Crea filed a counterclaim, plaintiff, for purposes of taking a deposition, subpoenaed Elbaum, a former student of Brooklyn Law School, Judge Thompson arranged to have his chief law assistant accompany Elbaum as his counsel. What Judge Thompson did in providing counsel for Elbaum did not subject plaintiff to deprivation of any right, privilege or immunity secured by the Constitution or laws of the United States. We do not perceive what Constitutional right plaintiff is invoking, but in any case there was no deprivation by this action of Judge Thompson's inasmuch as plaintiff prevailed on the counterclaim
 
 
 [5]
 Our affirmance rests on plaintiff's failure to show deprivation, not on his failure to show damages. Cf. Carey v. Piphus, --- U.S. ----, 98 S.Ct. 1043, 55 L.Ed.2d 252 (1978)
 
 
 [6]
 Defendant Elbaum the student who appeared as a witness before the committee of the trustees came at their request and did not share in or seek to further the discharge of plaintiff