848 F.2d 424
 Edward M. ROBISON, Edward McCaul, Jr., Lee Van Syckle,
Rosemary Hetrick, Bannister Allen III, Dennis J.
Springer, II, Edwin Watt and Karen
Speakman, Appellants,
v.
CANTERBURY VILLAGE, INC., a Pennsylvania Corp., and Thomas
J. Reilly, individually and as President of
Canterbury Village, Inc.
Thomas J. Reilly, Appellee.
 No. 87-3388.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 14, 1987.
Decided June 3, 1988.
 
 Grace S. Harris (argued), Pittsburgh, Pa., for appellants.
 Edward P. Zemprelli (argued), Zemprelli, Clipper and Campedel, Clairton, Pa., for appellee.
 Before SLOVITER, and COWEN, Circuit Judges, and DEBEVOISE, District Judge*.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 Arguably, our consideration of the merits of this appeal from the district court's grant of summary judgment for one of the two defendants on the ground that there was an insufficient showing of state action to support the constitutional and civil rights violations alleged inserts us into the fray sooner than prudentially sound because the second defendant is not before us. This anomalous situation arises from the somewhat unusual procedural history outlined below.
 
 I.
 Procedural History
 
 2
 Plaintiffs (collectively referred to as "Robison"), who at times relevant to this litigation both resided as tenants in the Borough of Seven Fields (Borough) and constituted its governing body or officers, sued Canterbury Village, a privately held corporation which developed Seven Fields, and Thomas J. Reilly, its president and a fifty percent shareholder, under various civil rights acts, specifically 42 U.S.C. Secs. 1971, 1973, 1983, 1985 and 1986. They alleged that Reilly and Canterbury Village had violated plaintiffs' First Amendment free speech rights, their Ninth Amendment rights to serve as public officials and to have their votes count, their Fourteenth Amendment privileges and immunities, due process, and equal protection rights, and their voting rights, and sought declaratory and injunctive relief, as well as an award of monetary damages and attorneys' fees. The essence of plaintiffs' claims, which we have with some difficulty extrapolated from the complaint and affidavits, is that Reilly and the Village, who developed Seven Fields as a residential development of mostly rental units on 500 acres of land in Cranberry Township, Pennsylvania, and thereafter incorporated Seven Fields as an independent borough under the laws of the Commonwealth of Pennsylvania,[1] instituted a series of retaliatory actions against elected members of the town council and the town's officers to coerce them into abiding by Reilly's wishes.
 
 
 3
 Reilly and Canterbury Village filed an answer and counterclaim alleging libel. The district court then established timetables for motions and responses, and stayed discovery until it decided the issue of its jurisdiction. After the defendants filed a motion to dismiss with Reilly's supporting affidavit and plaintiffs filed counter-affidavits and a motion to dismiss the counterclaim, the district court, treating the motions as seeking summary judgment in light of the submission of evidentiary materials, dismissed the action and counterclaim.[2]
 
 
 4
 While Robison's appeal was pending, Canterbury Village advised this court that it had filed for bankruptcy under Chapter 11 of the Bankruptcy Code between the time of the filing of the complaint and the district court's dismissal of the action. It apparently never previously advised the district court or Robison. This court remanded the matter with a direction that the district court consider whether its order dismissing the complaint should be vacated "at least as to Canterbury" in light of the automatic stay provision of the Bankruptcy Code, 11 U.S.C. Sec. 362 (1982 & Supp. IV 1986). Robison et al. v. Canterbury Village, Inc. and Thomas J. Reilly, No. 87-3096, slip op. at 3 (3d Cir. April 27, 1987) [817 F.2d 752 (table) ] (per curiam). The district court then vacated its order of dismissal as to Canterbury Village but retained it as to Reilly. Robison et al. v. Canterbury Village and Thomas J. Reilly, No. 85-1717 (W.D.Pa. April 30, 1987). Robison moved for certification of the district court's order pursuant to Fed.R.Civ.P. 54(b), which the district court granted, and Robison appeals.
 
 
 5
 Robison now complains on appeal that it is unfair that the order of dismissal "applicable to two defendants equally is suspended as to one." Appellants' Brief at 8. However, that is the inevitable result of the automatic stay. The court's Rule 54(b) certification, issued at Robison's request, made the order appealable. Robison also complains of unfairness because the order is before us only as to one defendant. It might indeed have been preferable had the district court declined to certify the dismissal of the complaint as to Reilly, so that the legal issues could be addressed with both parties before us.
 
 
 6
 In any event, we are satisfied that the order dismissing the complaint as to Reilly is, in fact, final. See Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 7-8, 100 S.Ct. 1460, 1464-65, 64 L.Ed.2d 1 (1980); Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360, 362 (3d Cir.1975). It effectively terminated the litigation as to him. Moreover, although Robison asserts that Reilly and Canterbury Village acted for all relevant purposes as a single unit, Appellants' Brief at 7, the claims as to Reilly are legally separable from those as to Canterbury Village. Even if we had the power to remand on the ground that the Rule 54(b) certification was an abuse of discretion, such a remand would delay the appeal until the conclusion of the bankruptcy proceeding as to Canterbury Village, which may be lengthy. In light of our plenary scope of review of the grant of summary judgment, we deem it preferable from the standpoint of judicial economy that we consider the merits of Reilly's appeal at this time, because we have jurisdiction and our disposition will undoubtedly be relevant to the case still pending in the district court.
 
 II.
 State Action
 
 7
 The district court dismissed on summary judgment all of the counts of the complaint that "involve, either directly or indirectly, Fourteenth Amendment violations and/or Sec. 1983 claims" on the ground that there was "not ... sufficient state involvement with this private party [Reilly and Canterbury Village] to create a finding of state action." Robison v. Canterbury Village, Inc., 651 F.Supp. 360, 363 (W.D.Pa.1987).[3] Our review is plenary. See Gans v. Mundy, 762 F.2d 338, 340 (3d Cir.), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). Cognizant of the Supreme Court's direction that "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance," Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961), we turn to the particular facts alleged here.
 
 
 8
 The gravamean of the complaint, supported by the affidavits of Edward M. Robison, who was elected President of the Council of the Borough of Seven Fields, and Karen Speakman, who was employed as Secretary-Treasurer of the Borough and was elected its tax collector, is that in November 1983, following the incorporation of Seven Fields as a Borough and its first election for town council and tax collector under the Borough Code of the Commonwealth, see 53 Pa.Stat.Ann. Secs. 45801-45861 (Purdon 1966 & Supp.1987), the newly-elected Borough council adopted a budget and tax structure which differed markedly from those proposed by Reilly. The complaint alleges that Reilly and Canterbury Village, "exercising control through [their] position[s] as landlord and employer of municipal employees," App. at 10, allegedly "instituted a series of intimidating and retaliatory measures against council ... intended to coerce and influence council in the exercise of their official duties [which] acts included, inter alia, refusals to renew leases, notice of eviction, threat of suit or physical violence, removal of Boro [sic] business and documents to Village offices, and termination of employment for Boro [sic] employees or officials who failed to comply with defendants' demands." App. at 11. The complaint states that in reaction to these actions, the first council and Speakman resigned en masse.
 
 
 9
 Robison's affidavit avers that Reilly refused to renew his lease on a yearly basis and "forced [him] out in 1984 for no reason other than [his] political activity." App. at 34. He also attests to the eviction or non-renewal of leases of others who spoke out. Speakman avers that she also "was forced by Reilly and the corporation to move," App. at 40, and that a councilman who spoke against Reilly's budget was sent a notice of eviction two days later.
 
 
 10
 Robison's affidavit also states that Reilly successfully pressured the council to replace the Borough's building inspector who "Reilly felt had not cooperated with him in his efforts to incorporate corporation property as a separate Boro [sic]" with "one acceptable to Reilly." App. at 36. Speakman avers by affidavit as follows:
 
 
 11
 Reilly insisted that the Boro [sic] employ only a part-time secretary and, especially after he took a dislike to me, I was constantly threatened with demotion from full-time to part-time.
 
 
 12
 App. at 44. It is unclear whether Speakman ever was in fact demoted to part-time employment, but her affidavit continues:
 
 
 13
 This not only cut my salary but deprived me, a single mother, of fringe benefits necessary for the health, safety and welfare of me and my three children.
 
 
 14
 Id.
 
 
 15
 The affidavit of Reilly filed in support of defendants' motion to dismiss denies that he or Canterbury Village evicted any of the plaintiffs or violated any of their constitutional rights, and further avers that he has never been an employee or officer of the Borough of Seven Fields and that neither he nor the Village was acting in any governmental capacity in any transaction with plaintiffs. App. at 47-48. However, the plaintiffs' affidavits aver that Reilly and the Village built and maintain the Borough's road service, supply the Borough with water and sewage systems, perform snow removal and garbage collection services, own the Borough's only fire engine, and provide police and fire protection. App. at 34, 36.
 
 
 16
 Robison appears to be arguing that we can find the requisite state action from two bases. The first is that the state, more particularly the Commonwealth Court, "put its imprimatur on Canterbury Village as the private party that could exercise state power through its ownership of Seven Fields Borough" because of its order holding the Borough could be incorporated. Appellants' Brief at 14. We hold that this theory of state action is unsupportable as a matter of law.
 
 
 17
 Recently, the Supreme Court held that Congress' grant of a corporate charter to the United States Olympic Committee (USOC) does not render the USOC a government agent to whom the prohibitions of the Constitution apply. San Francisco Arts & Athletics, Inc. v. United States Olympic Committee, --- U.S. ----, 107 S.Ct. 2971, 2984-85, 97 L.Ed.2d 427 (1987). The Court explained that "a government 'normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government].' " Id. 107 S.Ct. at 2986 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982)).
 
 
 18
 Therefore, the mere fact that the Commonwealth of Pennsylvania performed no more than the wholly neutral and ministerial act of incorporating the Borough cannot alone transform Reilly's status as a private person into that of a state actor. See Jackson v. Metropolitan Edison, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (mere fact that privately owned and operated electrical monopoly is subject to extensive state protection and regulation "does not by itself convert its action into that of the state"); see also Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (private school not state actor despite extensive state regulation and funding); cf. Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (private party invoking state statutory mechanism to attach and sequester disputed property acts under color of state law).
 
 
 19
 Robison's principal state action argument is that Seven Fields, owned and operated by Reilly, is a "company town" which performs all of the public functions of a government and therefore that Reilly (just as Canterbury Village which is not before us) is liable for constitutional violations to the same extent as a town or its officials would be. A fortiori, Robison relies on the allegations of Reilly's control over such traditional municipal services as the fire, police, and water departments to support this argument.
 
 
 20
 Under the public function test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966). The provision of municipal services is a traditional public function for which a private party can be held accountable as a state actor. See Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company town);[4] cf. Terry v. Adams, 345 U.S. 461, 482-84, 73 S.Ct. 809, 819-21, 97 L.Ed. 1152 (1953) (plurality opinion) (pre-primary election association); Evans, 382 U.S. at 299, 86 S.Ct. at 488 (park); Henderson v. Fisher, 631 F.2d 1115, 1118-19 (3d Cir.1980) (private university police).
 
 
 21
 However, the fact that Reilly may provide traditional governmental services does not end the inquiry. It simply does not follow that because many governmental functions are performed by a private party, all of that private party's actions are necessarily governmental actions. In Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 938, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982), the Court, discussing Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), stated, "the decision to discriminate could not be ascribed to any governmental decision; those governmental decisions that did affect Moose Lodge [the grant of a liquor license] were unconnected with its discriminatory practices." See also Herrmann v. Moore, 576 F.2d 453, 456 (2d Cir.), cert. denied, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978).
 
 
 22
 In the company town situation, only the actions or decisions connected with exercise of governmental functions are those that may be regarded as state action, such as a company town's refusal to permit persons to leaflet on the town's sidewalks or a park owner's refusal to admit blacks. On the other hand, no case has held that all of the actions of a private party who operates a company town are necessarily state action. The logical determinant must be whether the actions challenged as unconstitutional are performed in the exercise of the actor's governmental or public functions, rather than in the actor's private capacity.
 
 
 23
 In this case, the mere allegation that Reilly exerted pressure on and attempted to influence the council does not constitute an allegation of state action. We focus instead on the allegations that Reilly evicted or threatened to evict council members of whom he disapproved and affected in some manner the employment status of municipal employees such as Speakman. A public employer may not retaliate against an employee for his or her protected speech or conduct. See, e.g., Zamboni v. Stamler, 847 F.2d 73 (3d Cir.1988). Because discovery was stayed, and the only affidavits filed were those in connection with the motion to dismiss, the nature of the alleged conduct of Reilly vis-a-vis municipal employees has not been fleshed out. We certainly cannot rule out the possibility, indeed the likelihood, that one who performs municipal services and is de facto the employer of municipal employees will be held to have been a state actor in conduct towards such employees. The district court does not appear to have considered whether Reilly's alleged conduct as de facto employer of municipal employees should be treated as state action. We will remand so that the district court can make such a determination after the parties have been given the opportunity for reasonable discovery.
 
 
 24
 On the other hand, we find no basis to view the alleged evictions as state action in that they were effected, if at all, in Reilly's private landlord role. Robison relies primarily on Lavoie v. Bigwood, 457 F.2d 7 (1st Cir.1972), where the court held that a tenant of a mobile home park who was evicted in retaliation for complaints about the management of that park could maintain a section 1983 action because the Town of Merrimack, through the use of its zoning power, "allegedly placed monopoly power in private hands." Id. at 13. The mobile home park was the only one permitted in the town and there was testimony that there was no substitute location within 35 miles. Because the town, apparently for aesthetic and possibly tax reasons, restricted mobile homeowners in a way that it did not restrict those living in conventional homes, the court found an adequate allegation of state action.
 
 
 25
 It is patent that the unique circumstances in Lavoie, the state-created monopoly, are not applicable here. Thus, while we share plaintiffs' indignation at the manner in which Reilly allegedly sought to impose his wishes on elected officials through use of his power as a landlord, such action by Reilly, a private party, does not render him an "instrumentalit[y] of the State and subject to its constitutional limitations." Evans, 382 U.S. at 299, 86 S.Ct. at 488.
 
 III.
 Section 1985
 
 26
 Robison also claims that Reilly and Canterbury Village conspired to deprive him of his civil rights in violation of 42 U.S.C. Sec. 1985. Treating the allegation as one for violation of section 1985(3)[5], as the district court did, it is apparent that Robison has not alleged a viable section 1985(3) claim.[6]
 
 
 27
 Although section 1985(3), which is directed to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," does cover certain conspiracies by private parties, see Griffin v. Breckenridge, 403 U.S. 88, 102, 104-05, 91 S.Ct. 1790, 1798, 1799-1800, 29 L.Ed.2d 338 (1971), we must first determine whether Robison has satisfied the first step of a section 1985(3) analysis, i.e., allegation of a conspiracy, id. at 102-03, 91 S.Ct. at 1798-99.[7] The alleged co-conspirators in this case are a corporation, Canterbury Village, Inc., and its president, Reilly.[8] The district court held that a corporation cannot conspire with its president. To support his contention that the district court erred, Robison relies on Novotny v. Great American Federal Savings & Loan Association, 584 F.2d 1235 (3d Cir.1978) (in banc), vacated on other grounds, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). However, Novotny is inapposite, as we held there only that officers and directors of a corporation can conspire with each other for purposes of section 1985(3) and therefore had "no occasion to evaluate the force of the proposition that a corporation cannot conspire with itself." Id. at 1258.[9]
 
 
 28
 Other courts that have had occasion to consider whether a section 1985(3) conspiracy may arise between a corporation and its officer have held that it cannot. See, e.g., Doherty v. American Motors Corp., 728 F.2d 334, 339-40 (6th Cir.1984) (surveying cases); Rice v. President & Fellows of Harvard College, 663 F.2d 336, 338 (1st Cir.1981), cert. denied, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982); Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir.), cert. denied, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); Dombrowski v. Dowling, 459 F.2d 190, 196 (7th Cir.1972); see also 10 W. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations, Sec. 4884, at 361 (1986); cf. Tose v. First Pennsylvania Bank, N.A., 648 F.2d 879, 894 (3d Cir.) (corporation and its officer incapable of conspiring with each other for purposes of Sec. 1 of the Sherman Act), cert. denied, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); Poller v. CBS, Inc., 284 F.2d 599, 603 (D.C.Cir.1960) (same), rev'd on other grounds, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).
 
 
 29
 On the other hand, a section 1985(3) conspiracy between a corporation and one of its officers may be maintained if the officer is acting in a personal, as opposed to official, capacity, or if independent third parties are alleged to have joined the conspiracy. See Johnston v. Baker, 445 F.2d 424, 427 (3d Cir.1971); see also Cross v. General Motors Corp., 721 F.2d 1152, 1156-57 (8th Cir.1983), cert. denied, 466 U.S. 980, 104 S.Ct. 2364, 80 L.Ed.2d 836 (1984).
 
 
 30
 Robison has made no allegation of any conspiracy beyond that of Reilly conspiring with the corporation in his corporate capacity. Indeed, Robison has throughout the proceedings to date stressed the identity between the two. Under these circumstances, we are obliged to affirm the district court's dismissal of the section 1985(3) claim.[10]
 
 IV.
 Conclusion
 
 31
 For the foregoing reasons, we will affirm the district court's order granting Reilly's motion for summary judgment except insofar as Robison's claim is predicated on a violation under 42 U.S.C. Sec. 1983 by actions taken by Reilly as a de facto governmental employer. We will vacate the dismissal of that claim and remand for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 The complaint alleges that Reilly was motivated by his displeasure with the tax structure of Cranberry Township. The Common Pleas Court of Butler County denied his petition for incorporation under 53 Pa.Stat.Ann. Secs. 45201-45202 (Purdon 1966 & Supp.1987), but the Commonwealth Court of Pennsylvania reversed, permitting the development Seven Fields to become the Borough of Seven Fields. In re Incorporation of Borough of Seven Fields, 75 Pa.Commw. 334, 462 A.2d 865 (1983)
 
 
 [2]
 Reilly does not challenge the dismissal of his counterclaim on appeal
 
 
 [3]
 "State action" for the purposes of the Fourteenth Amendment and "color of state law" for the purposes of section 1983 are "identical." Lugar v. Edmondson Oil Co., 457 U.S. 922, 929, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982)
 
 
 [4]
 In Marsh, the Supreme Court held that because the "company town," one owned by a private party and which "[e]xcept for that ... has all the characteristics of any other American town," 326 U.S. at 502, 66 S.Ct. at 277, was the functional equivalent of a municipality, the Jehovah's Witnesses who wanted to distribute leaflets on its sidewalks could not be prevented from doing so. The state action in Marsh, however, was that of the state's enforcement of trespass laws; the Court held that "[i]nsofar as the State has attempted to impose criminal punishment on appellant for undertaking to distribute religious literature in a company town, its action cannot stand." Id. at 509, 66 S.Ct. at 280. Professor Tribe notes the irony of the fact that Marsh, "although it coined the phrase, was not on its own terms a true 'public function' decision." L. Tribe, American Constitutional Law Sec. 18-5, at 1708 (2d ed. 1988) (footnote omitted)
 
 
 [5]
 In his brief Robison relies on section 1985(1); that subsection governs interference with the duties of federal officials only and therefore has no relevance to the instant litigation. See Kush v. Rutledge, 460 U.S. 719, 724-25, 103 S.Ct. 1483, 1486-87, 75 L.Ed.2d 413 (1983). Because Robison's complaint does not limit itself to section 1985(1), we will analyze Reilly's actions under the relevant provision, 42 U.S.C. Sec. 1985(3)
 
 
 [6]
 42 U.S.C. Sec. 1985(3) (1982) provides, in relevant part:
 If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
 
 
 [7]
 In light of our disposition of this issue on the conspiracy ground, we do not decide whether the district court erred in finding that "there is clearly no class-based animus or invidious discrimination present on these facts." App. at 57. We note that the Supreme Court has recently stated that "[i]t is a close question whether Sec. 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause." United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 836, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). Although this court has reserved comment on whether "Sec. 1985(3) embraces private conspiracies to discriminate on the basis of factors other than race," Rogin v. Bensalem Township, 616 F.2d 680, 697 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), we previously held that a person who was not a member of a racial minority but who criticized his employer for its allegedly racially discriminatory practices had stated a cause of action under section 1985(3), Richardson v. Miller, 446 F.2d 1247 (3d Cir.1971). See also Hobson v. Wilson, 737 F.2d 1 (D.C.Cir.1984) (anti-war and civil rights political organizations), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); Keating v. Carey, 706 F.2d 377 (2d Cir.1983) (Republicans); Glasson v. City of Louisville, 518 F.2d 899 (6th Cir.) (political protestors), cert. denied, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975)
 
 
 [8]
 We do not attach significance to the fact that Reilly was also a principal shareholder of Canterbury Village. Robison has neither argued nor pointed us to any authority to suggest that a corporation can conspire with a shareholder, nor have we found any such authority
 
 
 [9]
 In its opinion in Novotny, the Supreme Court stated that "we assume but certainly do not decide that the directors of a single corporation can form a conspiracy within the meaning of Sec. 1985(3)." Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 n. 11, 99 S.Ct. 2345, 2349 n. 11, 60 L.Ed.2d 957 (1979)
 
 
 [10]
 Because no claim can be maintained under section 1986 unless a cause of action has been established under section 1985, see Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), we will affirm the district court's dismissal of Robison's section 1986 claim. We have also considered Robison's contentions under 42 U.S.C. Secs. 1971 and 1973 and find them to be devoid of merit, since each of those statutes deals with interference on racial grounds with a person's right to vote, and we find no evidence of interference with voting rights, much less for racial reasons, on this record. We likewise agree with the district court that Robison's allegations do not support a claim that would fall within the rights reserved to the people by the Ninth Amendment. See generally Griswold v. Connecticut, 381 U.S. 479, 486-94, 85 S.Ct. 1678, 1682-87, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring)