**Frank Andre WARE, Plaintiff,**

v.

**William P. BARR, et al., Defendants.**

**Frank Andre WARE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Nos. 93–1172–CIV–T–17,
93–1173–CIV–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

April 14, 1995.

See also 838 F.Supp. 1561.

Mina Jane Morgan, Mitcham, Weed, Barbas, Allen & Morgan, Tampa, FL, John S. McAvoy, Law Office of John S. McAvoy, Clearwater, FL, Anthony P. Gauthier, Thomas Patrick Howard, Law, Weathers & Richardson, Grand Rapids, MI, for plaintiff in No. 93–1172–CIV–T–17.

Frank Andre Ware, Kalamazoo, MI, pro se.

Whitney L. Schmidt, U.S. Attorney's Office, M.D.Fla., Tampa, FL, Ruth Ann Ernst, U.S. Attorney's Office, Grand Rapids, MI, for defendants.

Ellen S. Carmody, Anthony P. Gauthier, Thomas Patrick Howard, Law, Weathers &

Richardson, Grand Rapids, MI, for plaintiff in No. 93–1173–CIV–T–17.

## *ORDER*

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant F.B.I. Special Agent Clifford Hedges' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Docket No. 143) and Memorandum of Law in Support of said motion (Docket No. 144), filed on February 6, 1995, in these consolidated cases. Plaintiff filed his brief in opposition to Defendant's motion (Docket No. 148) on March 24, 1995. The motions and memoranda address counts II and III of Plaintiff's Amended Complaint. The Court, having considered the motions, memoranda and record, holds that Count II must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). As to Count III, the Court has referred to material outside the pleadings submitted by both parties in order to resolve the issues raised and considers Defendant's motion as to this count to be for summary judgment. Fed.R.Civ.P. 12(b)(6).

## FACTS

In April, 1989, Plaintiff, Frank Andre Ware, and George Pedrolini were arrested by the Pasco County Sheriff's Office for possession of approximately four (4) kilograms of cocaine and several weapons. The arrest followed an extensive investigation by the Federal Bureau of Investigation (the "FBI"), under the direction of Special Agent Cliff Hedges. Soon after the arrest, the grand jury sitting in the United States District Court for the Middle District of Florida returned an indictment, charging Plaintiff and Pedrolini with conspiracy to possess with the intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846, and with possession with intent to distribute the cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

A detention hearing was held before United States Magistrate Paul Game, Jr., and by order dated May 18, 1989, Magistrate Game found that there was probable cause to believe that Plaintiff had committed an offense, for which a maximum term of imprisonment

of ten years or more was prescribed, and further and expressly, finding that Plaintiff had "no employment or other substantial ties with this or any other community; that Ware was in the possession of a weapon at the time of arrest; that there was a serious threat that Ware would flee; and that Ware's release would cause a danger to the community."

Shortly thereafter, Pedrolini entered into a plea agreement and testified against Ware in a criminal trial in this division in August, 1989. Subsequently, Ware was convicted by a jury on all counts of the indictment. From the time of his arrest through his conviction, Plaintiff continuously maintained his innocence.

While serving his sentence in Milan, Michigan, Plaintiff sent a Freedom of Information Act ("FOIA") request to the FBI. The FBI responded with documents indicating that on June 6, 1989, Special Agent Hedges had made a request that the FBI Latent Fingerprint Division, in Washington, D.C., conduct a fingerprint analysis of the money seized in the investigation of Ware and Pedrolini. The information provided by the FBI also indicated that on July 7, 1989, the Latent Fingerprint Division sent a report that acknowledged finding sixty-eight (68) fingerprints and two (2) palm prints on the bills and that none of these prints belonged to Plaintiff.

On February 26, 1992, United States District Judge William Castagna entered an order vacating Plaintiff's judgment and conviction. The basis for the order was that the fingerprint report prepared by the FBI Identification Unit had not been provided to Plaintiff before trial. The court found this to be a violation of the mandate of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *United States v. Ware*, Case No. 89–92–Cr–T–15, *See*, Order Vacating Judgment and Sentence, February 26, 1992. Following the order vacating the judgment and conviction, a new jury trial was held in May, 1992, and Plaintiff was acquitted.

The current claims before this Court include a claim of conspiracy between Assistant United States Attorney Dennis Moore, the prosecutor in the first criminal trial, and

Defendant Clifford Hedges, to deprive Plaintiff of his constitutional rights, in violation of 42 U.S.C. § 1985(3), and a claim for constitutional rights violations based upon the United States Supreme Court decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

## DISCUSSION

### I. Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings. In deciding a 12(b)(6) motion, the court must determine whether Plaintiff's complaint sets forth sufficient allegations to establish a claim for relief. The court must accept all allegations in the complaint at "face value" and construe them in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The complaint must set forth enough information to outline the elements of a claim. Conclusory allegations are not acceptable where no facts are alleged to support the conclusion. The court cannot dismiss Plaintiff's complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### II. The Claim Under 42 U.S.C. § 1985(3)

Title 42 U.S.C. § 1985(3) provides a remedy for conspiracy to deprive, either directly or indirectly, any person or class of persons, of the equal protection of the laws. The United States Supreme Court has narrowed this broad language and requires a plaintiff, in order to state a claim, to allege that the defendants entered into a conspiracy motivated "by some racial or perhaps otherwise class-based invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

Plaintiff makes the § 1985(3) claim in Count II of Plaintiff's Amended Complaint.

Review of this claim for relief reveals that it is devoid of any allegation whatsoever of racially discriminatory animus. This failure in the pleading requires dismissal pursuant to Rule 12(b)(6).

However, even if this allegation were to appear in the complaint, summary judgment would be appropriate. Upon review of the plaintiff's deposition testimony, it appears that the only factual basis for this claim is that Plaintiff is black and the alleged co-conspirators are white. Because of this fact, Plaintiff apparently expects a jury to infer a racially discriminatory animus. In short, this type of argument, without more, would not be sufficient to survive summary judgment on this claim. *See Herrmann v. Moore*, 576 F.2d 453, 457 (2d Cir.1978).

### III. Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue of material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. That burden can be discharged by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323 and 325, 106 S.Ct. at 2552 and 2554.

Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. at 2510. In determining whether a material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983).

### IV. *Bivens* Action

This claim is based upon the alleged deprivation of Plaintiff's constitutional due process rights, due to the failure of the Defendant to provide the fingerprint reports to the defense. The result of the motion for summary judgment on this claim turns on the issue of qualified immunity, also known as "good faith" immunity.

In *Rich v. Dollar*, 841 F.2d 1558, 1560 (11th Cir.1988), the Eleventh Circuit Court of Appeals set forth a two (2) step framework for determining whether a public official defendant is entitled to qualified immunity. First, the defendant must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* at 1563. In determining whether the defendant has met this burden, the court required a showing of "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Id.* at 1564. Once the defendant satisfies this burden, the burden shifts to the plaintiff to prove that the public officials' actions violated clearly established constitutional law. *Id.* at 1564.

In this case the first step in the *Rich* analysis presents a genuine issue of material fact that precludes summary judgment as to

this count. This finding is based upon the affidavit of Special Agent Hedges and the declaration of Assistant United States Attorney (AUSA) Dennis I. Moore. The crucial fact at issue is whether Special Agent Hedges did in fact place (or cause to be placed) the results of the fingerprint analysis in the official FBI file or whether he intentionally or unintentionally misplaced or misdirected the report.

The issue of material fact arises because Defendant Hedges states that "on or about July 20, 1989, a written report from the Latent Fingerprint Section Identification Division dated July 7, 1989 was received by the Tampa FBI office." Hedges makes no clear statement in his affidavit whether or not he actually received and saw the report, only what he would normally do in the regular course of his job duties. The only concrete date that the Court has before it is the mailing date of the report from Washington, D.C. on July 7, 1989.

In addition, AUSA Moore states that at some time after July 10, 1989, he reviewed the entire case file to determine what discovery had been previously provided to Ware's attorney. Moore further states that the first time he became aware of the fact that a latent fingerprint examination was ever requested or performed by the FBI was upon reading Ware's Motion for Writ of Error Coram Nobis which was received by his office on January 9, 1992. This contrast in facts demonstrates that there is at least a material issue of fact remaining as to what happened to the fingerprint report after it was received by the FBI locally.

At this point, the determination that Defendant Hedges followed standard operating procedures with regard to the fingerprint report and did not purposely or accidentally withhold the report rests entirely upon his own testimony and credibility when confronted with the objective fact that the AUSA prosecuting the case never saw the report. Viewing the evidence in the light most favorable to Plaintiff under these circumstances, a reasonable trier of fact could find intentional wrongdoing on the part of Special Agent Hedges.

Therefore, the Court holds that if Defendant Special Agent Hedges did intentionally and knowingly fail to follow FBI standard operating procedures with regard to the fingerprint report, he was not acting within the scope of his discretionary authority. Defendant has failed to present "*objective* circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." The objective circumstances in this case raise questions; they do not provide answers.

■ This would generally be the end of the inquiry and summary judgment would be denied at this point. However, the qualified immunity defense must be determined as a matter of law and the Eleventh Circuit Court of Appeal, in *Howell v. Evans,* 922 F.2d 712 (11th Cir.1991), makes it clear that the correct analysis requires a determination of whether the allegedly violated constitutional right was clearly established, and then to determine if, given the facts most favorable to the plaintiff, a reasonable officer would have known that the alleged actions violated that right. *See, Anderson v. Creighton,* 483 U.S. 635, 642, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987).

It is indisputable in this case that the general right that Plaintiff Ware alleges to have been violated was itself well established at the time of his first trial and conviction. In 1963 the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).

*Anderson,* however, requires that this Court decide whether this formulation of the right, along with the clarification provided by the courts after *Brady,* provides a standard clear and specific enough for a reasonable official to have known whether the actions taken by Defendant in this case were unlawful. *Howell,* 922 F.2d at 719.

Defendant attacks these requirements on both fronts. First, Defendant argues that the fingerprint report in question was not

exculpatory in nature and therefore not *Brady* material in the first instance. Then, in the alternative, if it is determined to be *Brady* material, that a reasonable official in Special Agent Hedges position would not have known it to be such at the time the events transpired.

■ As to the first contention, this Court concurs with Judge Castagna's initial analysis of the *Brady* question regarding the fingerprint analysis in this case. The underlying basis for Judge Castagna's ruling remains overlooked or simply disregarded by Defendant in his argument that the fingerprint evidence was not *Brady* material. Judge Castagna specifically highlighted the fact that the crux of the government's case against Ware was based on his handling of the money. Due to these special factual circumstances, Judge Castagna found that there was a reasonable probability that the jury would have reached a different outcome had it known that none of the sixty-eight (68) fingerprints found on the money were Ware's. In this particular factual setting, what might otherwise be regarded as neutral material was clearly exculpatory to a reasonable probability. The subsequent acquittal of the defendant in a second jury trial enhances the sagacity of Judge Castagna's reasoning. Thus, this Court holds that the fingerprint analysis in this case constituted *Brady* material and the failure to turn that material over to the defense violated a clearly established constitutional right.

■ As to the second contention, if Defendant Hedges did in fact intentionally keep the fingerprint report from its appointed destination in violation of the standard operating procedures of the FBI, then the clear implication is that he knew, or a reasonable person in his position should have known, that this conduct would violate clearly established constitutional rights.

■ The more difficult issue arises, however, if it is ultimately determined that Special Agent Hedges followed what is generally accepted as proper procedure for an FBI agent in his position when dealing with fingerprint reports in general. Clearly he has a duty to refrain from intentional wrongdoing, but in this case a determination must be made as to whether he had an additional duty to take affirmative action and see to it that the report was in fact brought to the attention of AUSA Moore who was prosecuting Plaintiff in the underlying criminal case. In the analytical framework of *Anderson,* viewing the facts in a light most favorable Plaintiff, would a reasonable officer have known that the alleged *omission* violated the clearly established constitutional right.

This is a difficult determination in light of the critical interests implicated on both sides of the equation. On one side, a failure to affirmatively act on the part of the agent in this situation implicates individual rights of the highest order. The constitutional due process rights of the criminal accused and the liberty interest at stake in the outcome of trial must not be ignored. On the other side, the defense of qualified immunity was created to preserve the defendant's right to be free of the burdens of trial for reasonable, good faith decisions made in the course of day-to-day law enforcement.

In resolving this difficult question, the Court faces further genuine and critical issues of material fact that are properly resolved at trial. It must be determined if Defendant had an active role in the prosecution of Plaintiff in the first criminal trial; if he understood the theory of the Government's case; and the extent to which he helped develop the evidence to support that theory. It must also be established that Defendant read the report and was aware of the fact that it contained sixty-eight (68) fingerprints and two (2) palm prints, none of them matching Plaintiff. Viewing these elements in the light most favorable to Plaintiff would lead a reasonable officer to the conclusion that there was an affirmative duty to disclose the material to the defense as exculpatory *Brady* material and that the failure to do so would violate a clearly established constitutional right.

■ Thus, while the Court reaffirms the notion that good faith use of discretionary authority by government officials is protected from suit, a conscious omission which violates a clearly established constitutional right is not immune from suit. Due to the various

issues of material fact that remain, Defendant's motion for summary judgment is denied. Accordingly, it is

**ORDERED,** that Defendant's Motion to Dismiss be **GRANTED** as to Count II of the Amended Complaint and that Defendant's Motion for Summary Judgment be **DENIED** as to Count III of the Amended Complaint.

**DONE AND ORDERED.**